<table>
<tr><td colspan="2" align="center">**UNITED STATES DISTRICT COURT**</td></tr>
<tr><td colspan="2" align="center">**DISTRICT OF NEVADA**</td></tr>
<tr><td>ARB Labs Inc. and ARB Labs USA Inc.,<br><br>    Plaintiffs<br><br>v.<br><br>Justin Woodard,<br><br>    Defendant</td><td>Case No.: 2:19-cv-00116-JAD-PAL<br><br>**Order (1) Granting in Part Emergency Motion for Ex Parte Temporary Restraining Order; (2) Denying Motion for Civil-Seizure Order; and (3) Setting Hearing on Motion for a Preliminary Injunction**<br><br>[ECF No. 2]</td></tr>
</table>

Plaintiffs ARB Labs Inc. and ARB Labs USA Inc. claim that they created and own "ChipVue," which they contend is a proprietary 3D optical-recognition solution for casinos and other table-game providers. Defendant Justin Woodard served as ARB Labs' Chief Executive Officer for two years until he voluntarily resigned effective September 28, 2018. The parties' relationship quickly became acrimonious after Woodard's resignation. Woodard accused ARB Labs of breaching his employment agreement and threatened to sue if ARB Labs didn't sign a mutual release. ARB Labs investigated Woodard and found that he hadn't returned his company laptop and had sent and received emails through his work account for one week after he resigned even though ARB Labs had changed the password. So, ARB Labs sue Woodard for willfully and maliciously misappropriating their trade secrets, violating federal email privacy laws, breaching the employment agreement, and converting their property.[1]

ARB Labs move on an emergency and ex parte basis for orders (1) restraining and enjoining Woodard from acting on or with their trade secrets, placing himself in a position where he could misappropriate their trade secrets, and violating the noncompete provision in the

---
[1] ECF No. 1.

employment contract; (2) directing the U.S. Marshals Service to search for and seize the laptop computer that they contend is theirs but is in Woodard's possession; and (3) expediting discovery.[2] ARB Labs filed a supplemental brief and exhibits in support of their motion yesterday evening.[3]

ARB Labs have met the standard for a narrowly tailored restraining order without notice on its misappropriation-of-trade-secrets and breach-of-contract claims, so I grant them that relief and schedule their preliminary-injunction motion for prompt oral argument with an expedited briefing schedule. But ARB Labs have not demonstrated that these are "extraordinary circumstances" warranting a civil-seizure order, so I deny them that relief. Instead, I command Woodard to immediately turn over the laptop computer to ARB Labs' counsel. Finally, I refer the motion for expedited discovery to Magistrate Judge Leen.

## Discussion

**A.     Standard to obtain temporary restraining order without notice**

Rule 65 of the Federal Rules of Civil Procedure authorizes me to "issue a temporary restraining order without written or oral notice to the adverse party or [his] attorney only if" two conditions are met.[4] First, specific facts that "clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition" must be established by affidavit or verified complaint.[5] Second, "the movant's

---

[2] ECF No. 2.
[3] ECF No. 6.
[4] Fed. R. Civ. P. 65(b)(1).
[5] *Id.* at 65(b)(1)(A).

2

attorney" must certify "in writing any efforts made to give notice and the reasons why it should not be required."[6]

ARB Labs have shown, through the declaration and exhibits of Adrian Bulzacki, Chief Operating Officer and President of ARB Labs Inc., that immediate and irreparable injury, loss, or damage will befall it before Woodard can be heard in opposition to the motion for a temporary restraining order. ARB Labs have also shown, through the declaration of their attorney Shea Haass, why notice should not be required in this case. The upshot of Bulzacki's and Haass's narratives is that the bad blood between Woodard and ARB Labs is getting worse, Woodard still has access to ARB Labs' trade secrets courtesy of the company laptop that he failed to return when he resigned, and Woodard has engaged in questionable post-resignation activity vis-à-vis ARB Labs. Because both conditions for a without-notice restraining order are met here, I proceed to whether ARB Labs have met the other standards for this relief.

**B.    Standard for obtaining a temporary restraining order**

The legal standard for issuing a temporary restraining order and the legal standard for preliminary injunctive relief are "substantially identical."[7] Both are "extraordinary" remedies and "never awarded as of right."[8] The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that, to obtain an injunction, the plaintiff "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the

---

[6] *Id.* at 65(b)(1)(B).

[7] *See Stuhlbarg Intern. Sales Co. v. John D. Bush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the "analysis is substantially identical for the injunction and the TRO").

[8] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

3

public interest."[9] The Ninth Circuit also recognizes an additional standard: "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied."[10]

### 1. *There are serious questions going to the merits of plaintiffs' claims.*

To state a valid claim for breach of a written contract under Nevada law, the plaintiff must allege the existence of a valid agreement between the parties, a material breach by the defendant, and damages.[11] "Nevada's Uniform Trade Secrets Act, NRS Chapter 600A, provides that the '[a]ctual or threatened misappropriation [of a trade secret] may be enjoined."[12] To successfully maintain a claim for misappropriation of trade secrets under Nevada law, the plaintiff must demonstrate (1) the existence of a "valuable trade secret"; (2) "misappropriation of the trade secret through [acquisition,] use, disclosure, or nondisclosure of use of the trade secret"; and (3) that misappropriation was improper because it was made in breach of an express or implied contract by a party or with a duty not to disclose."[13]

To make the required showings for both claims, ARB Labs proffer an executed copy of the ARB Labs–Woodard employment agreement that requires Woodard, at the end of his

---

[9] *Id.* at 20.

[10] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

[11] *See Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) (per curiam).

[12] *Finkel v. Cashman Prof., Inc.*, 270 P.3d 1259, 1263–64 (Nev. 2012) (quoting Nev. Rev. Stat. § 600A.040(1)).

[13] *Kaldi v. Farmers Ins. Exch.*, 21 P.3d 16, 23 (Nev. 2001) (quoting *Frantz v. Johnson*, 999 P.2d 351, 358 (Nev. 2000)); *accord* Nev. Rev. Stat. § 600A.030.

4

employment, to return company property and return or destroy any confidential information in his possession. ARB Labs also provides invoices showing that Woodard purchased a laptop computer in February 2018 for $1,730.91. The authenticity of this document evidence is attested to by ARB Labs' president Bulzacki, who also declares that Woodard was reimbursed for this purchase by ARB Labs and that Woodard used this computer to access and house ARB Labs' trade secrets. But, Bulzacki claims, Woodard didn't surrender the computer to ARB Labs when he resigned in September 2018. Bulzacki claims that ARB Labs' trade secrets concern their "ChipVue" product, which he describes is a software and hardware solution for casinos looking for real-time analysis of table-game plays. Bulzacki also claims that he investigated Woodard's post-resignation activities and discovered that Woodard had accessed his work account to send and receive emails for a week even though ARB Labs had changed his password. Finally, Bulzacki informs the court in his supplemental declaration that yesterday—January 24, 2018—Woodard and R. Brooke Dunn, a former contractor of ARB Labs USA Inc., entered ARB Labs USA Inc.'s office in Las Vegas and removed three boxes from the premises. Bulzacki insists that neither Woodard nor Dunn had permission to enter or remove anything from ARB Labs USA Inc.'s offices. ARB Labs have demonstrated that there are at least serious questions going to the merits of their breach-of-contract and misappropriation-of-trade-secrets claims against Woodard.

### *2. The balance of hardships tips sharply in plaintiffs' favor.*

This *Winter* factor requires me to consider the effect that granting or denying a temporary restraining order will have on each party. The evidence tends to show that Woodard does not have the right to disclose or use ARB Labs' trade secrets, and he has the affirmative obligation to return the computer to ARB Labs. ARB Labs have demonstrated that they spent considerable

time and resources developing their ChipVue product and associated information and have expended reasonable efforts to maintain the confidentiality of that information. This supports the conclusion that ARB Labs will suffer irreparable harm if Woodard is permitted to acquire, disclose, or use that information. ARB Labs have also demonstrated that, since resigning, Woodard has acted inconsistent with his lack of rights to ARB Labs' trade-secret information. This supports the conclusion that ARB Labs will suffer irreparable harm unless Woodard is commanded to turn over the computer to ARB Labs' counsel. A narrowly tailored order temporarily restraining Woodard from taking any action on ARB Labs' ChipVue product and associated information—like destroying, copying, acquiring, disclosing, or using that product and information—should not have any harmful effect on Woodard, nor should a narrowly tailored order commanding Woodard to turn over the computer to ARB Labs' counsel.

### *3. The public's interest will not be injured by a narrowly tailored order.*

The final *Winter* factor requires me "'to consider whether there exists some critical public interest that would be injured by the grant of'" a temporary restraining order.[14] I do not perceive any critical public interest that would be injured by a narrowly tailored restraining order that prohibits Woodard from taking any action ARB Labs' ChipVue product and associated information. Nor do I perceive that the public would be injured by an order commanding Woodard to turnover the computer to ARB Labs' counsel. ARB Labs have met the standard for obtaining a narrowly tailored temporary restraining order without notice against Woodard, so I grant their emergency motion for that relief in part.

---

[14] *See Alliance for the Wild Rockies*, 632 F.3d at 1138 (quoting *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 596 F.2d 1098, 1114–15 (9th Cir. 2010) (internal quotations omitted)).

## C. Standard to seize materials in a private civil action for misappropriation.

Federal district courts may issue orders to seize materials in private civil actions about the misappropriation of trade secrets that are related to a product or service that is used or intended for use in interstate or foreign commerce.[15] The authorizing statute demands that this relief may be granted "only in extraordinary circumstances" where the order for seizure of property is "necessary to prevent the propagation or dissemination of the trade secret that is the subject of the action."[16] For a court to grant this extraordinary relief, it must find, among other things, that "it clearly appears from the specific facts that" an order issued under FRCP 65 would be "inadequate . . . because the party to which the order would be issued would evade, avoid, or otherwise not comply with such an order."[17]

ARB Labs do not directly address whether Woodard would evade an order under Rule 65 in their motion, but simply conclude in their proposed order that I've made this finding. The specific facts that ARB Labs provide are that Woodard purchased a laptop computer and was later reimbursed for it by ARB Labs, used the computer to access and house ARB Labs' confidential and trade-secret information about its ChipVue product, and kept the computer after he voluntarily resigned. Woodard accessed his work account to send and receive emails for one week after he had resigned even though ARB Labs had changed the password. Woodard, through his counsel, has taken the position that he doesn't owe any duties to ARB Labs under the employment agreement because ARB Labs materially breached that agreement. Woodard tried to settle his differences with ARB Labs and threatened to sue them if they didn't sign his

---

[15] 18 U.S.C. § 1836(b)(1).
[16] *Id.* at § 1836(b)(2)(a)(i).
[17] *Id.* at § 1836(b)(2)(A)(ii)(I).

proffered confidential mutual non-disclosure agreement. Six years ago, Woodard was sued by a former employer for misappropriation of trade secrets. And, yesterday, Woodard and another man entered ARB Labs USA Inc.'s Las Vegas office and removed three boxes without permission.

Though these facts raise the possibility that Woodard would ignore an order under Rule 65, it doesn't clearly appear from them that he "would." As I am not persuaded that an order under FRCP 65 would be "inadequate," I deny plaintiffs' motion for a civil seizure order.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that ARB Labs' emergency motion for ex parte temporary restraining order **[ECF No. 2] is GRANTED in part:**

- Justin Woodard, his agents and all persons in active concert or participation with him who receive actual notice of this order, whether acting directly or indirectly, are temporarily **RESTRAINED** from taking any action on ARB Labs' ChipVue product and associated information, including but not limited to destroying, copying, acquiring, disclosing, or using that product and information; and
- Justin Woodard is **COMMANDED** to immediately turn over the Microsoft Surface Pro laptop computer to ARB Labs' counsel.

IT IS FURTHER ORDERED that this temporary restraining order will automatically **EXPIRE at 5:00 p.m. on February 8, 2019,** unless it is extended by the court for cause or converted into a preliminary injunction.

IT IS FURTHER ORDERED under FRCP 65(c) that ARB Labs must post a bond in the amount of $1,730.91 to effectuate this order and recompense Justin Woodard if it is later

determined that he has been wrongfully restrained. The emergency motion for ex parte temporary restraining order is **DENIED** in all other respects.

IT IS FURTHER ORDERED that ARB Labs' motion for a civil-restraining order **[ECF No. 2] is DENIED.**

IT IS FURTHER ORDERED that ARB Labs' motion or expedited discovery **[ECF No. 2]** is **REFERRED** to Magistrate Judge Leen.

IT IS FURTHER ORDERED that ARB Labs are directed to serve Justin Woodard with a summons and copies of the complaint, the emergency motion [ECF No. 2], and this order as soon as practicably possible, but no later than 5:00 p.m. on January 29, 2019.

IT IS FURTHER ORDERED that ARB Labs' motion for a preliminary injunction [ECF No. 2] will be heard at **10:00 a.m. on February 6, 2019,** in Courtroom 6D of the Lloyd D. George Federal Courthouse, 333 Las Vegas Blvd. So., Las Vegas, Nevada 89101. Justin Woodard has until **5:00 p.m. on February 1, 2019,** to file any response to the motion or preliminary injunction. ARB Labs have until **12:00 p.m. on February 5, 2019,** to file any reply.

Dated: January 25, 2019

_____
U.S. District Judge Jennifer A. Dorsey